UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| KALSHIEX LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>JOHN A. MARTIN, et al.,<br><br>*Defendants*. | Case No.: 25-cv-1283-ABA<br><br><br>**PLAINTIFF'S MOTION FOR AN IMMEDIATE INJUNCTION PENDING APPEAL** |

Plaintiff KalshiEX LLC ("Kalshi") respectfully moves under Federal Rule of Civil Procedure 62(d) for an injunction pending appeal against Defendants John A. Martin, Michael Eaton, Everett D. Browning, Sr., E. Randolph Marriner, Ade Adebisi, Diane Croghan, George L. Doetsch, Jr., Harold E. Hodges, James J. Stakem, the Maryland Lottery and Gaming Control Agency, the Maryland Lottery and Gaming Control Commission, and Anthony G. Brown.  This Motion is based upon the memorandum of points and authorities contained in this document and all documents on file in this action including exhibits and affidavits.

Given the risk that Kalshi will be subject to criminal liability absent relief, Kalshi respectfully requests a ruling on its motion for an injunction pending appeal by August 5, 2025, after which Kalshi intends to seek relief from the U.S. Court of Appeals for the Fourth Circuit.  If the Court is inclined not to grant relief, Kalshi alternatively requests an interim injunction preserving the status quo while it applies for relief from the Fourth Circuit.

**INTRODUCTION**

"[E]very court that renders a judgment does so in the belief that its judgment is the correct one."  *Woollard v. Sheridan*, 863 F. Supp. 2d 462, 477 (D. Md. 2012).  But an initial judgment does not dictate the result of a motion for relief pending appeal.  *See Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980).  Were it otherwise, "a district court would *never*" order such relief.  *Maryland v. U.S. Dep't of Agric.*, 777 F. Supp. 3d. 496, 500 (D. Md. 2025).  Where a case presents difficult "issues of first impression," temporary relief is justified where needed to ensure the appellate court can deliberate on those questions without irreparable harm to the parties.  *Goldstein*, 488 F. Supp. at 176.

This is just such a case.  It concerns questions of first impression in this Circuit that have now divided district courts, two of which granted preliminary injunctions based on arguments

1

materially identical to those presented here. Those questions are also the subject of a pending, expedited appeal in the Third Circuit, which is scheduled for argument on September 8, 2025. *KalshiEX LLC v. Flaherty*, No. 25-1922. And even in denying Kalshi relief, this Court acknowledged that "there is some force to [Kalshi's] argument." Dkt. No. 70 ("Op.") at 14.

A brief injunction pending appeal is warranted given the disagreement among three federal courts on the merits of the preemption question and given the immediate and irreparable harm Kalshi will face if the Court's judgment remains in effect. Without interim relief, Kalshi will face an acute version of the Hobson's choice it described to the Court in its request for a temporary restraining order. Defendants have demanded that Kalshi "immediately" cease offering certain event contracts in Maryland or face criminal liability. Dkt. No. 1-1 at 2. Kalshi does not currently geolocate users, and implementing geolocation would be exceptionally costly and could not be done "immediately" as Defendants have requested. Even if Kalshi were to attempt to geolocate users, it still would be unable to obtain a license in Maryland, because Maryland law requires licensees to accept wagers exclusively from users within the state—a requirement that would be impossible for a nationwide exchange like Kalshi to satisfy. Kalshi would thus be faced with an untenable choice: It would either have to cease offering its sports-event contracts exclusively in Maryland while leaving them in place elsewhere, running afoul of the impartial-access requirements imposed on Kalshi by federal law, or else it would have to cease offering its sports-event contracts *nationwide*, which would be especially problematic given that Kalshi has obtained preliminary injunctions in two states permitting it to offer these very same contracts. This case thus presents precisely the sort of circumstance warranting a brief injunction pending appeal.

Should the Court decline to issue a full injunction pending appeal, Kalshi intends to seek an injunction pending appeal from the Fourth Circuit. Kalshi requests that even if the Court denies

a full injunction pending appeal, the Court issue a shorter-term injunction pending only the Fourth Circuit's resolution of Kalshi's request for an injunction pending appeal. *See United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (Barrett, J., concurring) (describing this type of "administrative" relief as a "flexible, short-term tool" designed "to minimize harm while an appellate court deliberates"); *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 695 (S.D.W. Va. 2012) (denying an injunction pending appeal but preserving the status quo "for an additional 14 days" to provide a party an "opportunity to seek relief in the Court of Appeals," because the appeal "involve[d] a question of first impression").

Given that it faces a risk of criminal liability, Kalshi respectfully requests a ruling on its motion for an injunction pending appeal by August 5, 2025, after which Kalshi intends to seek relief from the U.S. Court of Appeals for the Fourth Circuit. We have contacted counsel for Defendants to obtain their position on this motion, but as of the time of filing, we have not received a response.

## LEGAL STANDARD

On review of a motion for an injunction pending appeal, courts consider: (1) whether the movant is "likely to succeed on the merits," (2) whether they are "likely to suffer irreparable harm" absent an injunction; (3) whether the "balance of equities tips in [their] favor," and (4) whether "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of a motion for an injunction pending appeal, courts apply a sliding-scale approach to these factors. Where a court has already found that a party is not likely to succeed on the merits, it would not make sense to demand that a movant persuade the same court that it has a "strong likelihood of success." *U.S. Home Corp. v. Settlers Crossing, LLC*, No. 08-CV-1863, 2015 WL 3973071, at *6 (D. Md. June 29, 2015). It is enough to point to "serious questions of

law" and demonstrate that the remaining factors favor a stay. *Id.*; *see also Cross v. Fleet Rsrv. Ass'n Pension Plan*, No. 05-CV-0001, 2007 WL 7143977, at *3 (D. Md. Feb. 27, 2007) (granting stay pending appeal even though the "likelihood of success on appeal is not high"). Kalshi meets these requirements.

## ARGUMENT

### I.  Kalshi's Appeal Raises Serious Questions That Have Divided The Courts.

Kalshi has established a sufficient likelihood of success to warrant an injunction pending appeal. At the outset, the Court need not "change its mind or develop serious doubts concerning the correctness of its decision" for this factor to weigh in Kalshi's favor. *Profiles, Inc. v. Bank of Am. Corp.*, No. 20-CV-0894, 2020 WL 1905694, at *3 (D. Md. Apr. 17, 2020) (quoting *Goldstein*, 488 F. Supp. at 172). "Rather, the question before the Court is whether the [movant's] appeal presents 'an admittedly difficult legal question.'" *United States v. Mosby*, No. 22-CR-7, 2024 WL 3877613, at *3 (D. Md. Aug. 20, 2024). Kalshi readily satisfies that standard.

Kalshi's appeal presents issues of first impression in this Circuit that have divided three federal courts. As this Court recognized, the District of Nevada and the District of New Jersey each concluded that the Commodity Exchange Act ("CEA") preempts state regulation of Kalshi's event contracts on the basis of arguments that are materially identical to those before this Court. Op. at 15 (citing *KalshiEX LLC v. Hendrick*, No. 25-CV-575-, 2025 WL 1073495, at *6 (D. Nev. April 9, 2025), and *KalshiEX LLC v. Flaherty*, No. 25-CV-2152, 2025 WL 1218313, at *5-*6 (D.N.J. Apr. 28, 2025)). The Fourth Circuit could well agree with *Hendrick* and *Flaherty* regarding these "serious questions of first impression." *Goldstein*, 488 F. Supp. at 175.

Multiple features of this Court's ruling present, at minimum, a "close call" with which the Fourth Circuit may disagree on appeal. *Par Pharms., Inc. v. TWI Pharms., Inc.*, No. 11-CV-2466,

4

2014 WL 3956024, at *2 (D. Md. Aug. 12, 2014) (granting stay pending appeal). Without cataloguing the respects in which Kalshi respectfully disagrees with the Court's decision, a few important issues stand out.

For one, Kalshi has raised serious questions about the proper interpretation of the CEA's "exclusive jurisdiction" provision. Op. at 13-15 (quoting 7 U.S.C. § 2(a)(1)(A)). The Court acknowledged these questions, noting the "force" in Kalshi's textual argument. Op. at 14. Congress granted the Commodity Futures Trading Commission ("CFTC") "exclusive jurisdiction" over "swaps," including "event" contracts, transacted on designated contract markets ("DCMs"). 7 U.S.C. § 2(a)(1)(A); *id.* § 1a(47)(A)(ii). This Court assumed without deciding that Kalshi's sports-event contracts are swaps. The plain terms of the exclusive jurisdiction provision therefore encompass Kalshi's contracts, which the Court did not dispute are swaps that are traded on a DCM. The "plain meaning of 'exclusive' " "necessarily denies jurisdiction" to other entities not named in that provision. *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992). The Fourth Circuit has recognized that where federal agency jurisdiction "over a subject" is "exclusive," "the States cannot have jurisdiction over the same subject"—even where state regulation has traditionally "operate[d] within its own field." *PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467, 475-76 (4th Cir. 2014) (quotation marks omitted). The Fourth Circuit could conclude that the plain text of the exclusive jurisdiction provision therefore supports Kalshi.

This Court noted that Congress included a state-law savings clause in Section 2(a). Op. at 15. But Congress limited that savings clause with the proviso "[e]xcept as hereinabove provided." *See id.* § 2(a)(1)(A). Congress added that proviso for the specific purpose of "clarifying" that "where applicable," the jurisdiction of the CFTC "supersedes State as well as Federal agencies." H.R. Conf. Rep. No. 93-1383, at 35 (1974); *see also* Kevin T. Van Wart, *Preemption and the*

5

*Commodity Exchange Act*, 58 Chi.-Kent L. Rev. 657, 692-93 (1982) (Congress's inclusion of the proviso "wholly and unequivocally eliminated" each of the grounds on which the CEA had been found not to preempt state law before the 1974 amendments).

While the Court cited the preemption clauses in 7 U.S.C. §§ 16(e)(2) and 16(h), the Fourth Circuit could conclude that these clauses support Kalshi.  These two subsections preempt state laws as to transactions *that do not occur on DCMs*, which is why it was necessary to specify that the laws were preempted.  It would have been redundant for Congress to specify preemption of laws related to transactions on DCMs; that is what the exclusive jurisdiction provision already accomplished.  Section 16(e)(2)'s history underscores this conclusion.  Congress in that provision granted the CFTC authority to exempt certain instruments from the CEA, subject to the CFTC's oversight.  106 Stat. 3590, 3629-30 (1992).  Because exempted instruments would not have been traded on DCMs, states could have banned the very transactions the CFTC had determined should proceed.  By preempting state law in that circumstance, Section 16(e)(2) reinforced Congress's intent to establish a uniform federal framework for regulating instruments subject to the CFTC's jurisdiction.  More generally, the Fourth Circuit could conclude that Section 16(e), which provides that the CEA does not "preempt" the application of a "State statute" to *"any transaction in or involving any commodity . . . that is not conducted on or subject to the rules of a [DCM]*," 7 U.S.C. § 16(e)(1)(B)(i) (emphasis added), is compelling textual evidence that the CEA *does* preempt the application of state law to transactions that *are* conducted on DCMs.

The Fourth Circuit may also conclude that the Special Rule supports rather than undermines Kalshi's preemption argument.  *See* Op. at 17-18.  This Court relied on the provision in the Special Rule listing contracts involving activity "unlawful under any . . . State law" among those subject to public-interest review.  Op. 17 (citing 7 U.S.C. § 7a-2(c)(5)(C)(i)(I)).  But the

6

Fourth Circuit may agree with the *Flaherty* court that "the only workable interpretation" of that provision refers to the "underlying event[s] rather than the act of staking money on th[ose] event[s]"—all of which are legal in Maryland. 2025 WL 1218313, at *5. And even if that provision applies, the upshot would only be that Kalshi is subject "to the review of the CFTC— not state regulators." *Id.*; *accord Hendrick*, 2025 WL 1073495, at *6. By contrast, the Special Rule's reference to event contracts involving "gaming," *see* 7 U.S.C. § 7a-2(c)(5)(C)(i)(V), is compelling textual evidence that Congress understood that event contracts like Kalshi's would be subject to the CFTC's exclusive jurisdiction.

Finally, with respect to conflict preemption, the Fourth Circuit could disagree with the Court's view that Kalshi could "simply obtain" a Maryland sports-wagering license without imperiling its federal certification. *See* Op. at 27-28. Maryland requires any entity offering "sports wagers" to "ensure that all of its sports wagers are initiated, received, and completed within the State." Md. Code Regs. 36.10.16.03. Meanwhile, the CFTC's Core Principle 2 requires Kalshi to provide "impartial access to its markets and services." 17 C.F.R. § 38.151(b). This Court attributed any potential conflict to Kalshi's "desire not to comply with Maryland law." Op. 29. But Kalshi could not simultaneously offer impartial nationwide access to its exchange while accepting trades exclusively from within Maryland. Regardless, Kalshi's point is that *even if* it complied and offered its event contracts only in Maryland, Kalshi would still violate the impartial-access requirement for a nationwide exchange. To Kalshi's knowledge, it would be unprecedented for a DCM to attempt to offer contracts in some states but not in others, and the only reason the CFTC has not definitively determined as much is because it has never confronted a DCM that tried.

## II. Kalshi Faces Irreparable Harm Absent An Injunction Pending Appeal.

Absent an injunction pending appeal, Kalshi again faces a "Hobson's choice" of "violat[ing]" state law and "expos[ing] [itself] to potentially huge liability," or "suffer[ing] the injury of obeying the law during the pendency of the proceedings and any further review." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). The Court expressed skepticism about Kalshi's ultimate inability to obtain a license in Maryland. Op. at 28-29. But Kalshi certainly cannot obtain a license during the pendency of its appeal, and thus will be exposed to immediate irreparable harm. And bringing its nationwide exchange into compliance with Maryland's demands would cost Kalshi the benefit of the two preliminary injunctions it obtained in other federal courts against substantially similar state laws.

*First*, "immediate[]" compliance with Maryland law, as Defendants have demanded, *see* Dkt. No. 1-1 at 2, is not possible. Defendants did not meaningfully dispute that Kalshi could not *immediately* obtain a Maryland gaming license. *See* Dkt. No. 28 at 26-29. For instance, Kalshi has no current geolocation capacity, as geolocation is not required by CFTC regulations. Sottile Aff. ¶ 17; Md. Code Regs. 36.10.18.04 ("[a] sports wagering licensee" must have an "up to date" "geolocation system"). Developing that capability would, at minimum, take months and cost tens of millions of dollars, Sottile Aff. ¶¶ 20-21, a "credible" concern, *Hendrick*, 2025 WL 1073495, at *7. Kalshi's only option to comply during the appeal would be to terminate trading for its 17,000-plus users in Maryland, many of whom have open investments on the platform. Sottile Aff. ¶ 46. Yet that would expose Kalshi to liability for violating its contractual obligations to users and undermining those users' own rights; imperil its reputation; and imperil compliance with the CFTC's Core Principle that demands "impartial access" to Kalshi's exchange for all users, 17 C.F.R. § 38.151(b), which would be an "existential threat," *Hendrick*, 2025 WL 1073495, at *7.

*Second*, even if Kalshi were eventually able to comply with Maryland's demands, it would face a separate set of irreparable harms. Obtaining a Maryland gaming license would require Kalshi to accept *only* in-state positions, Md. Code Regs 36.10.16.03—which would be flatly impossible for a nationwide exchange. Kalshi therefore could not possibly obtain a gaming license in Maryland. Without the prospect of a gaming license, Kalshi would be faced with the choice of ceasing offering its contracts in Maryland while continuing to offer them elsewhere, in violation of the CEA's impartial-access obligations, or else ceasing offering these contracts *nationwide* as it seeks to vindicate its rights on appeal. *Cf. Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2550 (2025). That result would interfere with the preliminary judgments of the *Hendrick* and *Flaherty* courts, which found that federal law entitled Kalshi to offer these very same contracts. This additional, irreparable consequence warrants an injunction.

*Third*, Kalshi would face a distinct set of harms should it choose not to comply with Defendants' cease-and-desist letter during the pendency of an appeal. Without an injunction, Kalshi could lose its right to a meaningful appeal, the loss of which "constitutes per se irreparable harm." *CWCapital Asset Mgmt., LLC v. Burcam Cap. II, LLC*, No. 13-CV-278, 2013 WL 3288092, at *6 (E.D.N.C. June 28, 2013). Defendants had agreed to forego enforcement of the laws referenced in their cease-and-desist letter pending this Court's ruling on Kalshi's preliminary-injunction motion. Dkt. No. 21 at 1-2. With the issuance of the Court's decision, however, that stipulation no longer governs. If Defendants were to commence enforcement proceedings in Maryland state court, they could then attempt to seek federal-court abstention. *Cf. Younger v. Harris*, 401 U.S. 37, 46 (1971). Similarly, if Maryland were to secure a state-court liability judgment during the pendency of Kalshi's appeal, that judgment could not be cleanly undone even if Kalshi is ultimately successful. *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,

9

No. 16-CV-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016) (finding the harm factor "weigh[ed] strongly in favor of granting a stay pending appeal" based on a "real chance that [the movant's] right to meaningful appeal" would be undermined by "an intervening state court judgment").

### III.    The Remaining Equitable Factors Favor An Injunction Pending Appeal.

The remaining equitable factors favor an injunction pending appeal. Just as Kalshi will be irreparably harmed by enforcement proceedings, so too will Kalshi's users in Maryland because their "contracts and investment expectations would be disrupted if Kalshi were forced to terminate its existing contracts." *Hendrick*, 2025 WL 1073495, at *8. The countervailing interests Defendants identified in their preliminary-injunction briefing cannot overcome these harms for the period an injunction pending appeal would remain in effect. They principally pointed to foregone revenues and concerns that Kalshi could not ensure sufficient "financial stability" on its exchange. Dkt. No. 28 at 28-29. Defendants, however, have not adduced evidence that a brief injunction pending appeal—in which Kalshi plans to seek expedited briefing—would have long-term negative consequences on revenues from Maryland's gaming industry. Meanwhile, the CEA contains a range of regulations to ensure market stability, and to ensure that users are free from "abusive," "fraudulent," and "unfair" practices. *E.g.*, 17 C.F.R. §§ 38.651, 38.152.

The harm to Kalshi thus outweighs the harm to Defendants in granting an injunction. An injunction pending appeal would have the added benefit of permitting both the Third and Fourth Circuits to consider these questions in due course, without the need for emergency proceedings or duplicative litigation in state and federal court.

## CONCLUSION

This Court should grant the motion for an injunction pending appeal. Kalshi respectfully requests a ruling by August 5, 2025, after which Kalshi intends to seek relief from the U.S. Court of Appeals for the Fourth Circuit if relief has not been granted. Alternatively, if the Court is inclined to deny an injunction pending appeal, Kalshi respectfully requests an interim injunction for the brief period needed for the Fourth Circuit to rule on Kalshi's motion for an injunction pending appeal.

Dated this 1st day of August, 2025.                    /s/ *Neal Kumar Katyal*

                                                   Neal Kumar Katyal (D. Md. Bar No. 21694)
                                                   Joshua B. Sterling (*pro hac vice*)
                                                   William E. Havemann (D. Md. Bar No. 19164)
                                                   Milbank LLP
                                                   1101 New York Ave., NW
                                                   Washington DC 20006
                                                   Telephone: 202-835-7505
                                                   Facsimile: 213-629-5063

                                                   ATTORNEYS FOR PLAINTIFF